Nott, J.,
delivered the opinion of the court:
On the 13th of September, 1877, the United States were engaged in a somewhat celebrated Indian war with a body of Indians known as Joseph’s band of the Nez Perce''Indians. At that time the Indian defendants in this case were not only at peace with the United States, but acting as their military allies.
The international character of the band was this: In 1855 they were directly or indirectly parties to the treaty with the Nez Perces. (12 Stat. L., p. 957.) It appears by the treaty that one of the chiefs who signed it was named Joseph, and it *109 was assumed on the argument from the identity of name that the chief of the baud and the signer of the treaty were identical. But it appears in an official historical account of the band, prepared by the Commissioner of Indian Affairs at the request of the court (communicated through the Attorney-G-eneral since the case was submitted), that the present chief was only eleven years of age at the date of the execution of the treaty. It is believed that the father of the present chief was likewise named Joseph, and that he signed the treaty as the representative or chief of the band, but there is no definite information before the court on this point. In 1863 the band refused to be parties to a new treaty which ceded to the United States lands that had been assured to the Nez Perces by the treaty of 1855. In 1873 the Government recognized the independence or severalty of Joseph’s band by making the Wallowa Yalíey a reservation for the nontreaty Nez Perces, as they were termed. In 1875 this was revoked because of the pressure of white immigration. In 1877 the military forces of the United States took possession of the valley, and on the 14th of June hostilities began. In October, 1877, Joseph’s band surrendered to Col. Miles, after a pursuit of over 1,300 miles, “ as prisoners of war.” The Commissioner of Indian Affairs speaks of them as having “ shown themselves to be brave men and skillful soldiers, who, with one exception, have observed the rules of civilized warfare.”
At the same time the agent having charge of the Nez Perces, the defendants in this suit reported as follows:
“As soon as the war broke out the Indians living on the reservation, with but very few exceptions, and those living outside immediately took sides with the Avhites and rendered valuable assistance to the army as scouts, carriers of dispatches, keeping the different commands informed as to the movements of the hostiles, and in furnishing horses. The exceptions referred to above were not treaty Indians. I do not know of a single Christian Indian having left his home and joined the hostiles.”
It is clear, therefore, that at the time when this depredation was committed, first, that Joseph’s band were, in fact, a separate tribe or band or Indian organization; second, that the United States had recognized their separate existence or autonomy, and had accorded to them the belligerent rights of surrender as prisoners of war; third, that the Nez Perces Indians who are defendants in this suit did not commit the *110 depredation and upon no legal or moral ground can be made responsible for it. Tbe resulting question is whether the United States can be held liable.
By the Act 30th June, 1834 (4 Stat. L., p. 729, § 17), it was provided as follows: “The United States guarantee to the parties so. injured an eventual indemnification.” But this provision was repealed by the Act 28th February, 1859 (11 Stat. L., p. 388, § 8), and there was no subsequent assumption of liability by the United States until the Indian Depredation Act of 1891.
Under that statute the United States are responsible to claimants only in two classes of cases: First. Where the Indian defendants are responsible but are without funds to respond in damages. Second. Where the depredations were committed by Indians whose tribal relations can not be ascertained. In this case the claimant has not complied with these conditions. The defendant, Indians are not liable, because they did not commit the depredation. The United States are not liable, because the Indians who committed the depredation, and who were perfectly well known, have not been made parties to the suit. It is a fatal nonjoinder of the responsible party.
There is also a question relating to the quantum of damages, which may bo of importance as affecting the claimant’s right of appeal. This is one of those cases which were investigated and allowed by the Secretary of the Interior, and it has been reopened at the election of one of the parties. That party was the claimant, and the statute provides (§ 4) “that the party electing to reopen the case shall assume the burden of proof.”
The claim was presented to the Interior Department by ex parte affidavits on the part of the claimant, and it was reconsidered on ex parte affidavits taken on behalf of the Government. Upon the uncontradicted affidavits of the claimant the Secretary of the Interior allowed $6,500; upon the reconsideration of the case he allowed $285. The two sets of affidavits presented a case of conflict of evidence, and the Secretary ascribed credibility to those on behalf of the Government and discredited those on behalf of the claimant. That he had sufficient grounds for doing so; i. e., that his conclusion was not unsupported by the evidence, is apparent from an inspection of the record. It was a case where a jury might believe the testimony of either party, and the verdict, whichever way it went, would not be disturbed as against the weight of evidence.
*111 The claimant bas now submitted tbis case, wbicb be elected to reopen, and by wbicb election be assumed tbe burden, of proof, upon precisely tbe same evidence that was considered by tbe Secretary of tbe Interior, and no other. In tbe case of Calhoun (24 C. Cls. R., 414) it was beld in a similar condition of affairs tliat tbis court is not authorized to sit in review of tbe decisions of tbe Quartermaster-General or tbe Southern Claims Commission, and that when a claimant does not pursue bis remedy by new evidence bis case must be dismissed. In tbe present case tbe obligation is stronger, for on tbe one band tbe claimant bad an award wbicb be might have accepted, and on tbe other tbe statute expressly casts on him tbe burden of proof as a condition to bis reopening bis case.
In these Indian depredation cases a wider latitude of investigation exists than in tbe Southern Claims Commission and Quartermaster-General cases. Yet where a case is opened by a party on no other ground than tbe question of damages, and be submits it on no other evidence than that on wbicb it was considered by the Secretary of tbe Interior, tbe court will not lightly disturb tbe award. In tbe present case, tbe court is satisfied from an examination of tbe evidence that tbe amount allowed was substantially correct; that the damages alleged were grossly exaggerated. Aceordin gly, the value of tbe property destroyed is fixed at tbe amount of tbe award, $285.
Tbe judgment of tbe court is that tbe petition be dismissed.